**UNITED STATES v. SAGE.**
**Cr. No. 64.**

United States District Court,
D. Nebraska, Omaha Division.
Jan. 28, 1954.

John E. Deming, Asst. U. S. Atty., Omaha, Neb., and Dean W. Wallace, Asst. U. S. Atty., Dist. of Neb., Kearney, Neb., for plaintiff.

Donald L. Knowles, Omaha, Neb., for defendant.

DONOHOE, Chief Judge.

Defendant, Jerry Sherman Sage, was indicted by a Federal Grand Jury in this district for violation of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 462. The defendant entered a plea of not guilty and waived his right to trial by jury in the manner prescribed in Rule 23(a), Fed.Rules Crim.Proc. 18 U.S.C.A. Upon careful consideration of the admissible evidence produced at defendant's trial, the court makes the general finding that the defendant is not guilty.

In the absence of a request, special findings of fact are not required. Rule 23(c), Fed.Rules Crim.Proc., 18 U.S.C.A. However, without limiting in any way the general finding already made, the court would like to call attention to those factors which seemed most compelling in the disposition of this case.

Defendant was born at Louisville, Nebraska, on January 31, 1930, and is now 23 years of age. He became a member of and was baptised a Jehovah's Witness in 1942, and since that time has been consistent in his adherence to the teachings and principles of that sect.

Defendant registered for the selective service system on September 15, 1948, with his local board at Tekemah, Nebraska. On February 1, 1949, he filled out and filed the standard selective service questionnaire (form 110). He was classified 1-A by the local board on March 15, 1949. On September 30, 1949, the defendant filed a new questionnaire, together with an affidavit relating to family status and dependents. On November 18, 1950, the defendant filed the special questionnaire for conscientious objectors, but the local board voted 4 to 0 to retain defendant in Class 1-A. On December 11, 1950, the defendant appeared in person before the local board and presented letters from certain members of Jehovah's Witnesses. The defendant was then ordered to, and did, take his physical examination. Upon being found physically qualified he was ordered to report for induction. Defendant protested this order and was required to again appear before the local board on September 10, 1951. Just prior to this hearing on the 10th, the registrant's file had been forwarded to state headquarters, examined and returned because the local board committed a procedural error in failing to grant defendant a personal hearing. At his hearing before the local board, defendant presented a typewritten, and somewhat extended, personal appearance statement which was filed together with documentary evidence. The local board voted to continue defendant in 1-A and mailed him a notice of classification to this effect.

The defendant filed a notice of appeal and his file was forwarded to the state appeal board. On November 2, 1951, the file was returned to the local board because it was incomplete and because an unauthorized person had seconded a motion made in connection with defendant's classification by the local board. The local board reopened the case, cured the defect, and advised the defendant on October 2, 1951, that he had again been classified 1-A.

The defendant requested, and was granted, another personal appearance before the local board on October 22, 1951. He appeared and gave a personal statement but the board voted to continue him in 1-A. He was properly notified of this fact and, when another request to reopen his case was denied, he appealed. The defendant's file was forwarded to the state appeal board on November 5, 1951. On November 16, 1951, the appeal board for the state of Nebraska voted 4 to 0 that registrant should not be classified in either 1-A-O or 1-O; and pursuant to sec. 1626.25(2), Title 32 C.F.R. (1949 Ed.), forwarded the file to

the United States Attorney for this district. The Federal Bureau of Investigation conducted an investigation of the defendant and found:

\* \* \* that registrant is of excellent character and reputation and probably sincere in his religious beliefs and conscientious objections \* \* \* Except for two witnesses who stated that registrant had not made his religious beliefs known, all of those interviewed seemed to think that registrant was honest, trustworthy and sincere in his claim as a conscientious objector.

On April 6, 1952, the defendant filed a request with the local board to reopen and reconsider his classification for the reason that he had been appointed a pioneer minister by the Watch Tower Bible and Tract Society, Inc. and that he had discontinued all secular work and was devoting full time, since March 1, 1952, to his duties as a minister. Prior to this time defendant had been devoting 40 hours a week to secular employment. On April 15, 1952, defendant appeared before the hearing officer of the Justice Department and presented the evidence of his claim as both a minister and a conscientious objector. On May 7, 1952, the hearing officer concluded:

\* \* \* that the registrant is honest and sincere as a conscientious objector and that he is genuinely opposed to both combatant and non combatant military service and training.

Pursuant to the recommendation of the Justice Department hearing officer the Nebraska State Appeal Board classified the defendant 1–O on July 11, 1952. On July 15, 1952, the defendant's file was transmitted to the presidential appeal board which classified defendant 1–A on January 6, 1953. The defendant was ordered to, but refused to, be inducted into the Armed Forces of the United States.

█ There is a serious question as to defendant's classification because of the local board's failure to reconsider the defendant's classification in view of the new evidence presented by the defendant that he was not engaged, after March 2, 1952, in any secular work. Although Section 1625.2 of Title 32 C.F.R. (1949 Ed.) gives the local board discretion in the matter, if the board exercises its discretion in an arbitrary or capricious manner the classification may be in violation of the defendant's right to due process of law and therefore void. Considering the new evidence, together with the evidence already contained in the file, the court is at a loss to find any rational basis for the local board's refusal to reopen the defendant's case for the purpose of classifying him a minister (IV–D). See United States ex rel. Hull v. Stalter, 7 Cir., 1945, 151 F.2d 633. Although the new evidence was placed before the appeal board by the defendant himself, it is difficult to see how this cured the antecedent procedural defect since the regulations provide:

"In reviewing the appeal the appeal board shall not receive or consider any information not contained in the record received from the local board except the advisory recommendation from the Department of Justice \* \* \* and general information concerning economic, industrial and social conditions." 32 C.F.R. (1949 Ed.) 1626.24

Even if the court were to assume, which it cannot, that this procedural defect was cured, or that it was not prejudicial, the court could not find the defendant guilty.

In Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567, the Supreme Court announced:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local

boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification it gave the registrant."

In determining whether there is any basis in fact for the classification, the court calls to mind, the recently decided case of Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 157, wherein Justice Clark states:

"* * * since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption.

"We think Dickinson made out a case which meets the statutory criteria.

* * * * *

"The court below in affirming the conviction apparently thought the local board was free to disbelieve Dickinson's testimonial and documentary evidence even in the absence of any impeaching or contradictory evidence. The court manifested its own skepticism by pointing to Dickinson's youth, the unorthodox method of ordination by baptism, the failure to present stronger documentary evidence from Watchtower Society leaders, and the customary claim of Jehovah's Witnesses to ministerial exemptions. However, Dickinson's claims were not disputed by any evidence presented to the selective service authorities, nor was any cited by the Court of Appeals. *The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities.* We have found none here.

"Local boards are not courts of law and are not bound by traditional rules of evidence * * *. If the facts are disputed the board bears the ultimate responsibility for resolving the conflict—the courts will not interfere. Nor will the courts apply a test of 'substantial evidence.' *However, the courts may properly insist that there be some proof that is incompatible with the registrant's proof of exemption.*"

The defendant Sage made a prima facie case as a conscientious objector. In fact all the evidence in his file indicates that he is honest and sincere in his claim and that he is genuinely opposed to both combatant and non combatant military service. As required, this court has searched the record for "some" evidence incompatible with defendant's claim. None could be found. He indicated that he would use force to defend himself or his immediate family. In Taffs v. United States, 8 Cir., 208 F.2d 329, it was held that the testimony of a registrant that he would use force in defense of his life, property or fellow Jehovah's Witnesses was not a sufficient basis in fact to deny registrant's otherwise established claim for classification in 1–O, as a conscientious objector. See also United States v. Hartman, 2 Cir., 209 F.2d 366, noted in 22 L.W. 2313; Pekarski v. United States, 2 Cir., 1953, 207 F.2d 930; Annett v. United States 10 Cir., 1952, 205 F.2d 689.

There is a serious question that there is any basis in fact for denying defendant's claim for exemption as a minister (IV–D). See Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152. Schuman v. United States, 9 Cir., 1953, 208 F.2d 801; United States ex rel. Hull v. Stalter, 7 Cir., 1945, 151 F.2d 633. But we need not go into that. Suffice it to say that there was no basis in fact for the classification of the defendant in 1–A.

This case is hereby dismissed and the defendant discharged.